UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF GEORGIA

STATESBORO DIVISION

| | | |
|---|---|---|
| JAMAAL JOHN THOMAS GARRETT | ) ) ) | |
| | ) | Case No. CV615-031 |
| v. | ) | CR613-011 |
| | ) | |
| UNITED STATES OF AMERICA | ) | |

## REPORT AND RECOMMENDATION

Jamaal John Thomas Garrett, who pled guilty and has been sentenced to 274 months on a witness tampering charge, doc. 38, moves for 28 U.S.C. § 2255 relief. Doc. 48, *as amended*, doc. 58.[1] He seeks a trial, if not resentencing to 20 years. Doc. 48 at 12.

## I. ANALYSIS

### A. Excess Sentence

Garrett contends that his sentence exceeded the statutory maximum for his offense. Doc. 48 at 4. He pled guilty to violating 18 U.S.C. § 1512(a)(2)(A) and thus, he contends, faced no more than 20

---

[1] All citations are to the criminal case docket, and the page citations track those assigned by the Court's docketing software, not necessarily the actual printed pages.

years (240 months), yet received 274 months. *Id.* The Court first reviews his direct and collateral (hence, double) review waiver:

> To the maximum extent permitted by federal law, the defendant voluntarily and expressly waives the right to appeal the conviction and sentence and the right to collaterally attack the sentence in any post-conviction proceeding, including a §2255 proceeding, *on any ground*, except that: the defendant may file a direct appeal of his sentence if it *exceeds the statutory maximum*; and the defendant may file a direct appeal of his sentence if, by variance or upward departure, the sentence is higher than the advisory sentencing guideline range as found by the sentencing court.

Doc. 39 at 6 (emphasis added).

The Government wants it enforced. Doc. 55 at 1-2, 4-5. "Waivers like [Garrett's] 'will be enforced if the government demonstrates either: (1) the district court specifically questioned the defendant about the waiver during the plea colloquy, or (2) the record clearly shows that the defendant otherwise understood the full significance of the waiver.' *United States v. Benitez–Zapata*, 131 F.3d 1444, 1446 (11th Cir. 1997)." *Taylor v. United States*, 2016 WL 742118 at * 3 (S.D. Ga. Feb. 24, 2016). By signing his plea agreement, Garrett confirmed that he had read and understood the entire document, including the collateral-attack waiver. Doc. 39 at 10. During his plea colloquy, he testified under oath that he understood all the rights he was giving up by pleading guilty, including

2

the waiver, which was read to him and about which he was questioned, then indicated his understanding. Doc. 51 at 14-21, 23-26, 35, 37-40, 43-44, 46. The waiver is thus enforceable,[2] but Garrett's claim -- that his sentence exceeds the statutory maximum -- is an express waiver exception, so it is not barred.

Yet, he failed to appeal this claim, so it *is* barred by procedural default. *See Lynn v. United States*, 365 F.3d 1225, 1232 (11th Cir. 2004) (movants under § 2255 "generally must advance an available challenge to a criminal conviction or sentence on direct appeal or else [are] barred from presenting the claim in a § 2255 proceeding"); *Stone v. Powell*, 428 U.S. 465, 478 n. 10 (1976) (28 U.S.C. § 2255 will not be allowed to do service for an appeal).[3]

---

[2] Collateral appeal waivers like Garrett's are routinely enforced. *See, e.g., Demell v. United States*, 623 F. App'x 969, 972-73 (11th Cir. 2015) (bank fraud defendant knowingly and voluntarily waived his right to collateral review as part of a plea agreement, thus precluding his motion to vacate his sentence, where during the plea colloquy, the district court specifically questioned defendant about the collateral-attack waiver and told him that he was waiving his right to both a direct appeal and an indirect appeal in a post-conviction proceeding, defendant affirmed that he understood the terms of the waiver and had agreed to those terms, and defendant stated that he had no questions about the plea agreement); *Spaulding v. United States*, 2016 WL 1047041 at * 3 (S.D. Ga. Mar. 10, 2016); *Rasco v. United States*, 2014 WL 10754131 at * 1 (S.D. Ga. Sept. 3, 2014).

[3] In *United States v. Frady*, the Supreme Court explained:

"A defendant can avoid a procedural bar only by establishing one of the two exceptions to the procedural default rule. Under the first exception, a defendant must show cause for not raising the claim of error on direct appeal and actual prejudice from the alleged error. *Bousley v. United States*, 523 U.S. 614, 622, 118 S.Ct. 1604, 1611, 140 L.Ed.2d 828 (1998). . . . Under the second exception, a court may allow a defendant to proceed with a § 2255 motion despite his failure to show cause for procedural default if a constitutional violation has probably resulted in the conviction of one who is actually innocent."

*Lynn*, 365 F.3d at 1234 (quotes omitted). Garrett makes no attempt to explain his failure to directly appeal this claim, much less show cause and prejudice. Nor does he show actual innocence (indeed, he pled guilty). His claim, then, is barred.

But even if it is not, it still fails because he was *not* sentenced beyond the statutory maximum. The Probation Officer prepared a Presentence Investigation Report (PSI) showing that Garrett qualified as a career offender under U.S.S.G. § 4B1.1(b)(1), fixing his offense level at 37. PSI ¶ 18. He reduced it three levels for Garrett's timely acceptance

---

When Congress enacted § 2255 in 1948, it simplified the procedure for making a collateral attack on a final judgment entered in a federal criminal case, but it did not purport to modify the basic distinction between direct review and collateral review. It has, of course, long been settled that an error that may justify reversal on direct appeal will not necessarily support a collateral attack on a final judgment. The reasons for narrowly limiting the grounds for collateral attack on final judgments are well known and basic to our adversary system of justice.

456 U.S. 152, 165 (1982) (collecting cases).

of responsibility, resulting in a total offense level of 34. PSI ¶¶ 19-21. Garrett's career offender status set his criminal history category at level VI. PSI ¶ 49.

Those calculations were made against a critical controlling fact: Garrett faced the statutory maximum term of *life* imprisonment per 18 U.S.C. § 1512(a)(2)(A).[4] PSI ¶ 77. Even so, he received some benefit.

---

[4] 18 U.S.C. § 1512(b) provides that anyone who engages in witness tampering proscribed by the statute "shall be fined under this title or imprisoned not more than 20 years, or both." 18 U.S.C. § 1512(b). But § 1512(j) further provides:

> If the offense under this section occurs in connection with a trial of a criminal case, the maximum term of imprisonment which may be imposed for the offense shall be the higher of that otherwise provided by law or the maximum term that could have been imposed for any offense charged in such case.

18 U.S.C. § 1512(j). Thus, the maximum term of imprisonment "otherwise provided by law" is the twenty years. 18 U.S.C. § 1512(b). But where the maximum term of imprisonment for the underlying conduct that prompted the witness tampering exceeds twenty years, the offender faces that penalty, per § 1512(j). *United States v. Salazar*, 542 F.3d 139, 146-48 (5th Cir. 2008) (where underlying offense carried a potential life sentence, defendant was subject to life sentence under § 1512(j)); *United States v. Ruhbayan*, 527 F.3d 107, 112 n. 4 (4th Cir. 2007) (affirming life sentence imposed under § 1512(j)), cited in *United States v. Jordan*, 2009 WL 2999753 at * 5 (S.D.N.Y. Apr. 21, 2009).

Garrett argues that he was charged with violating § 1512(a)(2)(A), not § 1512(j). Doc. 48 at 4. But to be charged with violating § 1512(a)(2)(A) is to be subjected to § 1512(j)'s penalty. Garrett's indictment cites only § 1512(a)(2)(A), doc. 1-2, but it did not have to also cite § 1512(j). *Almendarez-Torres v. United States*, 523 U.S. 224, 228 (1998) ("An indictment must set forth each element of the crime that it charges . . . [b]ut it need not set forth factors relevant only to the sentencing of an offender found guilty of the charged crime."). In any event, the Government's penalty certification, while it also failed to cite § 1512(j), nevertheless expressly warned him of the "[n]ot more than life imprisonment" maximum penalty that he faced. Doc. 6. The district judge reminded Garrett that he faced a possible life

5

With a total offense level 34 and a criminal history category VI, his advisory range of imprisonment was 262 to 327 months. PSI ¶ 78. Prior to sentencing, Garrett requested a downward departure pursuant to U.S.S.G. § 5K2.13 based on his allegedly diminished capacity. PSI, Addendum. The Probation Officer advised against it. *Id.* In fact, he recommended 327 months, Sentencing Rec. at 1, but the district judge imposed only 274. Doc. 38. Again, Garrett's sentence thus did *not* exceed the statutory limit -- life. *See supra* n. 4. He was warned by the Government's penalty certification (doc. 6) and the district judge, yet pressed on with guilty plea. Doc. 51 at 31. He cannot ply buyer's remorse now.[5]

## B. Ineffective Assistance

Garrett next contends that his attorney rendered ineffective assistance of counsel (IAC) by: (a) failing to advise him that he would

---

sentence giving Garrett a chance to change his mind and back out of the plea. Doc. 51 at 31. Garrett pressed on. *Id.* at 31-32.

[5] Garrett also invokes *Apprendi v. New Jersey*, 530 U.S. 466 (2000), because the enhancement was based on facts he did not admit. *Apprendi* held that "[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." 530 U.S. at 490. Here, Garrett was not sentenced beyond the statutory maximum, so there is no *Apprendi* error. *United States v. Dudley*, 463 F.3d 1221, 1227-28 (11th Cir. 2006). This claim thus fails even if not waived.

qualify as a career offender under the Sentencing Guidelines; (b) forcing him to plead guilty by telling him he faced a life sentence if he went to trial and lost; (c) failing to move to withdraw his guilty plea after he claimed later not to understand the associated waiver of rights; (d) failing to consult with him about a direct appeal; and (e) failing to challenge the presentation of allegedly perjured testimony before the grand jury. Doc. 48 at 5, 7, 8.

For an IAC claim in a guilty-plea case a defendant must "show (1) that counsel's performance fell below an objective standard of reasonableness; and (2) that there is a reasonable probability that, but for counsel's errors, the defendant would not have pled guilty and would have insisted on going to trial." *Rasco*, 2014 WL 10754131 at * 1 n. 3 (quotes and cites omitted). And double waivers preclude all IAC claims except those that directly go to the voluntariness of a guilty plea and waivers. *Id.* at * 1; *see also Spaulding*, 2016 WL 1047041 at *3 ("such an IAC claim must go directly to the validity of the guilty plea and post-conviction waivers -- that counsel misled or coerced his client into pleading guilty/waiving his rights, or in some way materially bungled the plea offer to the extent that a client would not knowingly and

intelligently accept it. *McClendon v. United States*, 944 F. Supp. 2d 1351, 1356 (S.D. Ga. Mar. 10, 2014).").

Garrett's involuntariness claims ((a) & (b) above) are neutralized by his sworn testimony at his guilty-plea hearing. There, after counsel had explained the double waiver to him,[6] it was read to him. Doc. 51 at 37-38. The district judge then broke it down into lay terms and paused after explaining each segment of the double waiver to ask Garrett if he understood -- and he said he did. *Id.* at 38-39. The judge also directly asked Garrett to cough up any involuntariness grounds while ensuring that he understood the double waiver, and warning him that:

> Q. You lose your right to say your lawyer was no good, the government tricked you or lied about you. You're sweeping all of that under the rug. You understand that?
>
> A. Yes, sir.
>
> Q. That's the reason I've been so particular, once you told me what you said, to make sure that no one has coerced you in any regard to enter this plea, that it's your decision, not your lawyer, not a co-defendant, not Rodney Scott[7] or anyone back there. You understand that?

---

[6] In an unrebutted Declaration his counsel says: "I thoroughly reviewed with [Garrett] every term of the proposed plea agreement, including the appeal and collateral attack waiver, during two visits to [a local jail detaining him, prior to the guilty-plea hearing]." Doc. 55-1 at 1 ¶ 4.

[7] The judge had read the indictment to which Garrett was pleading guilty:

8

A. Yes, sir.

Q. Am I correct in saying this is your decision and you've had the advice of your lawyer, but you know that he can't make the decision for you. You understand that?

A. Yes, sir.

Q. All right.

Doc. 51 at 39 (footnote added). The judge had also asked him:

Q. But I still do not want to take your plea unless this is what -- has your lawyer gone back there and threatened you and said you better plead guilty because you'll get a longer sentence?

A. No, sir. I just don't want to take a chance. I'm guilty of the crime, Your Honor. I feel like I have no way to win.

Q. Has anybody tried to force you or coerce you to change your decision after a few minutes ago?

A. No, sir.

---

[THE COURT T]hat charge says that on or about the 11th day of June, 2013, in Liberty County, Georgia, which is within the Southern District of Georgia, you did use the threat of physical force against Matthew Hawkins by telling Hawkins that because Hawkins was planning on testifying against Rodney Lorenzo Scott in the trial of the United States vs. Rodney Lorenzo Scott that was pending in this court, Statesboro Division, he would kill Hawkins' mother and burn down her house with the intent to influence, delay and prevent the testimony of Hawkins in an official proceeding and thus, he violated Title 18 of the United States Code Section 1512(a)(2)(A). That's what you're telling me you're pleading guilty to?

[GARRETT] A. Yes, sir.

Doc. 51 at 31.

> Q. Or an hour or so ago?
>
> A. No, sir.
>
> Q. Well, the Court has kind of leapfrogged ahead because there's no need to continue with the Rule 11 colloquy unless we clear up that.
>
> Now, according to the tampering with a witness by force or threat, pursuant to 18 U.S.C. 1512 (a)(2)(A), the Court can sentence you up to *life* imprisonment, you understand, for that?
>
> A. Yes, sir.

Doc. 51 at 30-31 (emphasis added). The judge even took a recess to encourage Garrett to consult with counsel, then asked defendant:

> Q. But I asked you was there anything wrong, did somebody mistreat you or fabricate something on you? And I'm not trying to get you to agree. You know, I have to work every day, and whether you plead guilty or not is entirely your decision, and you ought to listen to your lawyer. But it's your decision that counts in the end, not your lawyer. You understand that?
>
> A. Yes, sir. I would like to plead guilty.

*Id.* at 28-29. Finally:

> Q. And I asked you, did your lawyer try to force you into pleading guilty?
>
> A. No, sir.
>
> Q. Are you pleading guilty because you're dissatisfied with your lawyer?
>
> A. No, sir.

*Id.* at 18.

This sworn testimony extinguishes Garrett's IAC claims (a) & (b). Whatever Garrett's lawyer, Jack Morris Downie, advised about armed career criminal status is irrelevant because that implicated a penalty risk *less* than the maximum (life sentence) that the judge warned Garrett about, yet Garrett nevertheless accepted. And claim (b) -- that Downie "forced" Garrett to plead guilty by telling him he would face a life sentence if he went to trial and lost -- was *accurate* advice, which can never support an involuntary plea claim.

IAC claim (c) -- that counsel failed to move to withdraw Garrett's guilty plea after he claimed later not to understand the associated waiver of rights -- is barred by the double waiver, since it does not go to the guilty plea's voluntariness. Plus, the record shows that Garrett did understand the waiver and is simply lying about it now. The double waiver also bars claim (e) -- failing to challenge the presentation of allegedly perjured testimony before the grand jury (and, as explained *infra*, this claim is also waived by the guilty plea itself).

Garrett's failure to consult claim (claim (d)) also fails. Downie insists he did not receive this Court's Notice of Post-Conviction

Consultation Certification ("Notice").[8] *See* doc. 55-1 at 3 ¶ 7. But he does declare that he fully consulted with Garrett before and after sentencing. *Id.* at 2-3. In any event, this claim is barred by the collateral appeal waiver. Facing prosecution for perjury if he lies here,[9]

---

[8] The Notice reminds counsel of the general "duty to consult" with the client about an appeal by "advising the defendant about the advantages and disadvantages of taking an appeal, and making a reasonable effort to discover the defendant's wishes." *Roe v. Flores-Ortega*, 528 U.S. 470, 478 (2000). It requires that both the defendant and counsel execute the form, thus memorializing their consultation and the defendant's instructions regarding an appeal. That memorialization can avoid the expense associated with an evidentiary hearing (appointment of counsel for defendant, transporting him from a distant prison, burdening the court's time and limited resources), which often costs taxpayers "$10,000 or more, and in a time of record national debt." *Hayes v. United States*, 2011 WL 3468799 at * 5 n. 5 (S.D. Ga. Aug. 9, 2011), *adopted*, 2011 WL 4704219 (S.D. Ga. Oct. 6, 2011); *see also Marshall v. United States*, 2015 WL 3936033 at * 2 (S.D. Ga. June 26, 2015) (citing cases where similar § 2255 motions were summarily addressed based on the Notice).

Regrettably, the Notice apparently was not provided to Downie at the sentencing hearing. Doc. 55-1 at 3 ¶ 7. Still, for years it has been publically available on the Court's website, *see* http://www.gasd.uscourts.gov/pdf/NoticeToCounsel.pdf, and should Downie receive a CJA appointment again, he should use it whether or not he is handed a copy at sentencing. Failure to do so may result in denial of CJA fees, if not imposition of any downwind §2255 evidentiary hearing costs.

Too, the undersigned has directed the Clerk to send (and memorialize on the docket) all lawyers a copy of the Notice upon their first appearance in Savannah division cases. *Reed v. United States*, 2014 WL 1347455 at * 1 n. 4 (S.D. Ga. Apr. 4, 2014). The Court also urges prosecutors to physically hand a copy of the Notice to defense counsel at each sentencing in the event that the deputy clerk fails to do so. Finally, the defense bar is reminded that the Notice is aimed at *assisting* each lawyer's duty to consult. Failure to receive a copy of the Notice does *not* excuse counsel's failure to uphold that duty.

[9] Lying under oath, either live or "on paper," is a criminally prosecutable offense. *See United States v. Roberts*, 308 F.3d 1147, 1155 (11th Cir. 2002) (defendant's falsely subscribing to statement in his habeas petition that he had not previously filed a § 2255 motion was "material" for purposes of perjury prosecution; statement fooled the

12

Garrett does not claim that he instructed Downie to appeal, only that he failed to consult him about one (this comports with Downie's Declaration, doc. 55-1). Garrett thus waived this IAC claim.

C. ACCA Claim

In his § 2255 amendment, Garrett argues that, because *Johnson v. United States*, ___ U.S. ___, 135 S. Ct. 2551 (2015), invalidated the "residual clause" of the Armed Career Criminal Act (ACCA), 18 U.S.C. § 924(e)(1), he is entitled to sentencing relief. Doc. 58. But as the Government correctly points out, doc. 57, he qualified as a career offender under the advisory Sentencing Guidelines. PSI ¶ 18. That guideline is triggered when a defendant is convicted of a "crime of violence or a controlled substance offense" and has "at least two prior felony convictions of either a crime of violence or a controlled substance offense." U.S.S.G. § 4B1.1(a). A "crime of violence" is defined, in part, in much the same way as the ACCA's "residual clause." *See* U.S.S.G. §

---

clerk of the court into accepting the "writ" for filing, and led the magistrate judge to consider its merits until she discovered that the "writ" was a successive § 2255 motion in disguise); *United States v. Dickerson*, CR608-36, doc. 1 (S.D. Ga. Dec. 11, 2008) (§ 2255 movant indicted for perjury for knowingly lying in his motion seeking collateral relief from his conviction); *id*., doc. 47 (guilty verdict), cited in *Irick v. United States*, 2009 WL 2992562 at * 2 (S.D. Ga. Sept. 17, 2009); *see also Colony Ins. Co. v. 9400 Abercorn, LLC*, 866 F. Supp. 2d 1376, 1378 n. 2 (S.D. Ga. 2012).

13

4B1.1, comment. (n.1); id. § 4B1.2(a)(2) ("or otherwise involves conduct that presents a serious potential risk of physical injury to another"). Despite the linguistic similarity between the ACCA and § 4B1.2, *Johnson*'s reach "is limited to criminal statutes that define elements of a crime or fix punishments," and thus is inapplicable to career offender enhancements (this claim is otherwise double-waived). *United States v. Matchett*, 802 F.3d 1185, 1194 (11th Cir. 2015). It is thus not necessary to reach the Government's additional argument about whether *Johnson* applies to § 2255 motions.[10]

### D. Prosecutorial Misconduct

Finally, Garrett argues that former Assistant United States Attorney Cameron Ippolito "used perjured statements and threat tactics to have [him] indicted and force [him] to plead guilty." Doc. 58 at 2. She "used unlawful . . . statements at [his] grand jury that were prejudiced and false and knowingly false and unlawful." *Id.* He also claims that

---

[10] *See Welch v. United States*, ___ U.S. ___, 136 S.Ct. 790 (2016) (granting *certiorari* to decide "[w]hether [*Johnson*] announced a new substantive rule of constitutional law that applies retroactively to cases that are on collateral review."); *Mays v. United States*, No. 14-13477, ___ F.3d ___, Slip. Op at 16 (11th Cir. Mar. 29, 2016) ("we hold that *Johnson* applies retroactively on collateral review to prisoners seeking habeas relief for the first time."); *see also In re Johnson*, ___ F. 3d ___, 2016 WL 762095 at * 6 (11th Cir. Feb. 26, 2016) (holding an application for leave to file a successive § 2255 motion "in abeyance, pending the Supreme Court's decision in *Welch*."), *vacated for reh'g en banc*, ___ F.3d ___, 2016 WL 919483 (11th Cir. Mar. 10, 2016).

Ippolito forced Hawkins -- the witness who Garrett threatened, resulting in the federal charges here, *see supra* n. 7 -- to lie about Garrett threatening him, which Ippolito caused by "us[ing] somebody to attack [Hawkins] and payed [sic] people to attack him" at "every jail he went to." *Id.* Garrett says he's innocent of his crime and that, "if it wasn't for [Ippolito's] prosecutorial misconduct, I would be a free man." *Id.*

Again, Garrett freely and voluntarily pled guilty to witness tampering. Doc. 38. As the above-excerpted guilty-plea colloquy shows, he told this Court, *while under oath*, that he was guilty of the offense. He was asked about and denied that he was entrapped, coerced, or forced into that plea by anything that anyone else did. Unsurprisingly, his "buyer's remorse" allegations here are bereft of evidentiary support beyond his own assertions. They do not suffice to undo his sworn, guilty-plea answers that he was not being tricked or pushed by a bed of lies or other such chicanery. *See Blackledge v. Allison*, 431 U.S. 63, 73-74 (1977); *United States v. Barrett*, 514 F.2d 1241, 1243 (5th Cir. 1975) (if the Rule 11 plea taking procedure is careful and detailed, the defendant will not later be heard to contend that he swore falsely). Hence, this claim is barred by his double waiver, and because a guilty plea otherwise

15

bars all pre-plea claims. *Tollett v. Henderson*, 411 U.S. 258, 267 (1973); *United States v. Pierre*, 120 F.3d 1153, 1155 (11th Cir. 1997).

### III. CONCLUSION

Accordingly, Jamaal John Thomas Garrett's motion to amend his § 2255 motion, doc. 58, is **GRANTED,** but his § 2255 motion, as amended, should be **DENIED**. Docs 48 & 58. The miscellaneous motions in the file are all **DENIED** as moot. Docs. 43, 44 & 46. Applying the Certificate of Appealability (COA) standards set forth in *Brown v. United States*, 2009 WL 307872 at * 1-2 (S.D. Ga. Feb. 9, 2009), the Court discerns no COA-worthy issues at this stage of the litigation, so no COA should issue either. 28 U.S.C. § 2253(c)(1); Rule 11(a) of the Rules Governing Section 2254 Cases ("The district court *must* issue or deny a certificate of appealability when it enters a final order adverse to the applicant.") (emphasis added).

**SO REPORTED AND RECOMMENDED**, this __30th__ day of March, 2016.

UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF GEORGIA